SIMON ZALTMAN *vs.* TOWN CLERK OF STONEHAM
& another.[1]

Middlesex.    April 14, 1976. — April 27, 1977.

Present: KEVILLE, GOODMAN, & GRANT, JJ.

*Subdivision Control,* Constructive approval of plan.

Where a planning board sent a letter to the town clerk advising him
that it had voted tentatively to disapprove an applicant's subdivision
plan but took no final action within the sixty days permitted by
G. L. c. 41, § 81U, the letter did not constitute a "certificate of . . .
[final] action" within the meaning of § 81U and the plan was
deemed to have been constructively approved under the fourth para-
graph of § 81U. [250-253]

CIVIL ACTION commenced in the Superior Court on July
18, 1974.

The case was heard by *Cross,* J.

The case was submitted on briefs.

*Frank M. Geremonte* for the plaintiff.

*Thomas M. Leahy* for the defendants.

GOODMAN, J. By this action the plaintiff seeks to com-
pel the defendant town clerk of Stoneham to certify in
accordance with G. L. c. 41, § 81V, that the plaintiff's plan
for the subdivision of certain land in Stoneham (the locus)
has been constructively approved because the planning
board (the board) failed to take final action on that plan
or to file a certificate of such action within sixty days of its
submission to the board. See G. L. c. 41, § 81U. The board's
motion to intervene as a party defendant was allowed. The
trial judge heard evidence, filed findings of fact, and or-
dered that judgment enter dismissing the plaintiff's com-
plaint. The plaintiff appeals from the judgment so entered.

---

[1] The planning board of Stoneham.

We summarize the relevant facts. Pursuant to G. L. c. 41, § 81O, the plaintiff on December 14, 1973, filed with the board a definitive subdivision plan for the locus.[2] The board submitted two copies of the plan to the town engineer for his recommendations. The town engineer returned the copies to the board with an accompanying letter dated January 14, 1974, in which he stated, "There are so many things wrong with these plans that I am returning them to ... [the board] for corrections. I have made some of the changes in pencil." On January 16, 1974, the board conducted the public hearing required by G. L. c. 41, § 81T; after the hearing the board voted (as stipulated by the parties) "to tentatively disapprove the plaintiff's plan until such time as certain corrections were made on said plan as recommended by the town engineer."[3] The following day, the board's chairman sent a letter signed by him to the town clerk stating, "This is to advise that the ... [board] at a regularly scheduled meeting held January 16, 1974 voted unanimously to tentatively disapprove ... [the plaintiff's subdivision plan] until recommendations of the town engineer are followed."

After receiving the board chairman's letter, the plaintiff entered into negotiations with the planning board and the town engineer in an effort to devise a subdivision plan satisfactory to all. The minutes of a meeting of the board on January 30, 1974, disclose that the board postponed discussion of the sixty-day period within which the board was required to take final action, if it were to avoid constructive approval of the plan. See the fourth paragraph of G. L. c. 41, § 81U. On Tuesday, February 12, that sixty-day

---

[2] The case has been argued on the footing that proper notice was given to the town clerk in compliance with G. L. c. 41, § 81T.

[3] By letter of January 17 the board wrote to the plaintiff: "At a regularly scheduled meeting of the Planning Board held January 16, 1974 following the Public Hearing on your subdivision of S. Marble St. it was voted unanimously to tentatively disapprove the definitive plan submitted December 14, 1973 ... until such time as certain changes recommended by the town engineer on a copy of said plan submitted with a letter dated January 14, 1974 are made to his satisfaction."

period expired; but the negotiations between the plaintiff, the board, and the town engineer continued through the middle of May[4] and resulted in the drawing up by the plaintiff's engineer of a new subdivision plan which the board was willing to approve. However, the plaintiff, after obtaining an estimate of the cost of constructing an additional sewer extension called for by the new plan, decided that the new plan was unacceptable to him. On July 2, 1974, the plaintiff's attorney wrote the town clerk requesting that she certify, pursuant to G. L. c. 41, § 81V, that the original subdivision plan had been constructively approved by virtue of the board's failure to take final action or to file a certificate of such action within sixty days of the plan's submission. The town clerk refused to issue such a certificate, and this litigation followed.

The fourth paragraph of G. L. c. 41, § 81U (as amended through St. 1960, c. 266, § 2), provides, "Failure of the planning board either to take final action or to file with the ... town clerk a certificate of such action regarding a plan submitted by an applicant within sixty days after such submission ... shall be deemed to be an approval thereof." The plaintiff contends that pursuant to this provision the board must be deemed to have constructively approved his original subdivision plan. We agree.

It is not clear whether the board intended (cf. *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 164 [1959], and *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1, 5 [1961]) that its January 16 vote constitute a final disapproval of the plaintiff's plan within the meaning of the fourth paragraph of § 81U or whether the board intended

---

[4] The negotiations were described by the chairman of the board: "Well, for a period of I would say roughly four months, up until around mid or end of May, Mr. Zaltman practically I guess at every meeting from that time on appeared with another revised or revision or change. Some were probably suggested by us, I'm sure they were, most of them were changes that were recommended in Mr. Markham's letter and marked up plan, a few were not put in there, we both agreed that we couldn't force them in, I believe. They also agreed, as I think Mr. Geremonte pointed out, to put in a water line and a few other things ...."

merely an invitation to further negotiations to explore how or whether the board might ultimately (pursuant to § 81U) "modify and approve" rather than "disapprove" the plan. The latter possibility is suggested by the qualification of the disapproval as "tentative" and the reference in the board's minutes of January 30, 1974, to "the sixty-day limitation." Further, the course of negotiations, after the January 17 letter (see fn. 2), indicates that the parties did not intend the reference to the recommendations of the town engineer to be a statement "in detail wherein the plan does not conform to the rules and regulations of the planning board..." as § 81U requires in the event of final disapproval, so that the developer may amend the plan to "conform[] to such rules and regulations" and thereupon require the board to "revoke its disapproval and approve [the] plan." Cf. *Potter* v. *Board of Appeals of Mansfield*, 1 Mass. App. Ct. 89, 94-95 (1973).

On the other hand, it could be argued that the board's characterization of its vote as "tentative" simply reflected its recognition that under § 81U the board's final disapproval of a plan must inevitably be tentative in some sense since § 81U obliges the board to "revoke its disapproval and approve a plan" which is amended to meet the board's objections. Also it could be argued that, in any event, the plaintiff treated the board's January 16 vote as final by continuing to seek board approval of an amended plan for over three months after the expiration of sixty days from the submission of his original plan and that therefore, where third parties do not appear to have been affected, he should not be heard to argue that the board's vote did not constitute final action. See *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. at 162. See also *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 169 (1969).

However, we need not attempt to resolve the ambiguity in the action of the board. Whatever uncertainty might be tolerated as between the parties, a record in the town clerk's office of definitive action must be made within the statutory time period. This is the import of the require-

ment of § 81U that a "certificate of such [final] action" be timely filed to avoid constructive approval. In *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow, supra,* at 168, the Supreme Judicial Court said: "A certificate has been defined as a 'written assurance, or official representation, that some act has or has not been done . . ..' The filing of a certificate is required in order that all concerned may rely upon recorded action, or the absence thereof within stated times," citing *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 125 (1964). See *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. at 162, n.4; *M. DeMatteo Constr. Co.* v. *Board of Appeals of Hingham,* 3 Mass. App. Ct. 446, 459-460 (1975). The letter which the *Kay-Vee* case held not to qualify as a certificate of approval or disapproval is similar to the letter filed with the town clerk in this case. It is as true of the letter in this case as it was of the letter in the *Kay-Vee* case (at 168) that "it was conditional and a person examining it would not know whether the board had finally approved or disapproved the plan." See *Pierce* v. *Town Clerk of Rochester,* 3 Mass. App. Ct. 728 (1975). Contrast *Pinecrest, Inc.* v. *Planning Bd. of Billerica,* 350 Mass. 336, 337, 338-339 (1966).

The statute, as we have applied it, should not create practical difficulties for a planning board. It should be no great burden to file a certificate which shows either (a) an unequivocal present approval of a plan as submitted or as modified by conditions (see *M. DeMatteo Constr. Co.* v. *Board of Appeals of Hingham,* 3 Mass. App. Ct. at 460) or (b) its present unequivocal disapproval (see *Pinecrest, Inc.* v. *Planning Bd. of Billerica,* 350 Mass. at 337-339). Further, the sixty-day period need not impede continued negotiations, for § 81U provides for "such further time as may be agreed upon at the written request of the applicant."

Consequently, the plaintiff's original subdivision plan must be deemed to have been constructively approved under the fourth paragraph of § 81U. However, it does not follow that the board is without means of relief; it may, under § 81W, "modify, amend or rescind" its constructive

approval of the original plan. *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow*, 355 Mass. at 169-170. *Pierce* v. *Town Clerk of Rochester*, 3 Mass. App. Ct. at 728. Accordingly, the judgment is reversed. To afford the board, if so advised, an opportunity to modify, amend, or rescind its constructive approval, no judgment is to be entered until after sixty days from the date our rescript issues to the Superior Court. If within that period the board takes such action, judgment is to enter dismissing the complaint; otherwise judgment is to enter in the plaintiff's favor.

*So ordered.*