NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1190

MEADOW WOOD LLC

vs.

CITY OF BROCKTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from a decision of the Plymouth Superior Court denying its motion for summary judgment and entering judgment for the plaintiff. The dispute arises from an effort by the plaintiff, a property developer, to obtain approval for a planned development located in the defendant city. On March 3, 2020, the planning board of Brockton (board) voted to approve a development plan submitted by the plaintiff (2020 plan). The 2020 plan depicted a way running from West Chestnut Street in Brockton to the city border with West Bridgwater and three buildable lots abutting the way. The board's approval was conditioned on, inter alia, a requirement that the way instead terminate in a cul-de-sac, rather than at

the West Bridgewater border.[1]  In response, the plaintiff subsequently withdrew the 2020 plan and, on February 3, 2021, submitted a second plan to the board, which the board considered at a meeting held on February 23, 2021 (2021 plan).  This new plan featured essentially the same way, that is, without a cul-de-sac, but now, in contrast to the 2020 plan, an e-mail from the plaintiff to the board indicated that portions of land adjacent to the way were either unbuildable due to terrain conditions or otherwise not buildable lots.  In light of the change, the plaintiff now requested that the board provide an "approval not required" (ANR) endorsement for the 2021 plan pursuant to G. L. c. 41, § 81P considering the parcels of land created by the proposed way were now designated on the plan as unbuildable, and, therefore, did not constitute lots subject to subdivision control.  The board refused the ANR endorsement, because, inter alia, the plan was unclear and appeared to represent an effort to circumvent subdivision control.  The

_____

[1] Several public commenters at a January 7, 2020, meeting suggested that the proposed way would be a "road to nowhere" and that the plaintiff was "not being forthright."  Commenters further expressed concern that the plaintiff intended to extend the way and build a larger development outside the scope of the 2020 plan.  A representative for the plaintiff confirmed that development into West Bridgewater was under consideration. While the planning board was not explicit as to its reasoning in its letter notifying the plaintiff of the board's approval, it appears likely that the requirement to terminate the way using a cul-de-sac was intended to prevent expansion of the project into West Bridgewater.

plaintiff appealed that decision to the Superior Court asserting that the 2021 plan did not depict lots subject to subdivision control and that the board was acting in bad faith as a result of having had judgment entered against it in an earlier dispute with the plaintiff involving the same property.[2]  A judge of the Superior Court reversed the board, finding that the 2021 plan indeed did not depict buildable lots and that an ANR endorsement was therefore required under c. 41, § 81P.  This appeal followed.  After review, we reverse the judgment and affirm the decision of the board denying the endorsement.

Discussion.  "We review the motion judge's decision on summary judgment de novo."  Barry v. Planning Bd. of Belchertown, 96 Mass. App. Ct. 314, 317 n. 6 (2019), quoting Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018). "[General Laws] c. 41 requires that any plan showing a 'subdivision' of property must be approved by the local planning board."  Barry, supra at 317, quoting G. L. c. 41, §§ 81L, 81O. "'Subdivision' shall mean the division of a tract of land into two or more lots[.]"  G. L. c. 41, § 81L.  "A 'lot' is defined as 'an area of land in one ownership, with definite boundaries, used, or available for use, as the site of one or more

---

[2] The plaintiff did not press its argument pertaining to bad faith in its opposition to the defendant's motion for summary judgment and the motion judge did not address it in her decision.

3

buildings.'"[3]  Cricones v. Planning Bd., 39 Mass. App. Ct. 264, 266 (1995), quoting G. L. c. 41, § 81L.

"A principal purpose of the subdivision control law is to ensure that all newly created lots have adequate access 'by ways that will be safe and convenient for travel,' G. L. c. 41, § 81M, because residents' 'safety, convenience, and welfare depend critically on that factor.'"  Barry, 96 Mass. App. Ct. at 317, quoting Palitz v. Zoning Bd. of Appeals of Tisbury, 470 Mass. 795, 803 (2015).  "A plan does not require planning board approval, however, if it does not show a 'subdivision'; in that event the plan is entitled to an endorsement 'approval under the subdivision control law not required,' frequently referred to as an 'ANR' endorsement."[4]  Barry, supra at 317, citing G. L. c. 41, § 81P.

_____

[3] The division of land into lots does not constitute a subdivision when lots have sufficient frontage on existing or approved ways.  See Ninety Six, LLC v. Wareham Fire District, 92 Mass. App. Ct. 750, 753 (2018).  See also G. L. c. 41, § 81L. The plaintiff did not raise that exemption before the board or the motion judge, so we do not address it here.

[4] General Laws c. 41, § 81P provides:

"Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town in the manner prescribed in section eighty-one T, and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person

With that framework, we turn first to consider whether the development plan depicted "the division of a tract of land into two or more lots." G. L. c. 41, § 81L. It is undisputed that the ways depicted in the 2020 and 2021 plans are virtually identical, as the plaintiff conceded as much in its memorandum in opposition to summary judgment before the motion judge. The 2020 plan depicted two lots on the east side of the way and a third to the west. Given our review, along with the plaintiff's concession that the two plans are "exactly the same," we are left with the firm conviction that the 2021 plan depicts a proposed way splitting the subject property into no fewer than two lots. See G. L. c. 41, § 81L. As a result, the plan is subject to approval by the board unless the plaintiff can present an exception to the general rule found in G. L. c. 41, § 810.

Toward that end, the plaintiff argued before the board and the motion judge that the 2021 plan did not depict subdivision of land into lots because the portions of land created by the way were either composed of unbuildable terrain or otherwise labeled "not buildable." In doing so, the plaintiff relies on

authorized by it the words 'approval under the subdivision control law not required' or words of similar import with appropriate name or names signed thereto, and such endorsement shall be conclusive on all persons. Such endorsement shall not be withheld unless such plan shows a subdivision."

5

the legal principle that a plan which "expressly disavow[s], on the face of the plan, any claim of availability . . . for building purposes . . . [does] not represent a division of the land into two or more 'lots.'" Cricones, 39 Mass. App. Ct. at 266, quoting Bloom v. Planning Bd. of Brookline, 346 Mass. 278, 283-284 (1963). The board rejected the contention; board members stated during the February 23 meeting that the plaintiff was attempting to avoid subdivision control and that the 2021 plan was ambiguous as to whether it contained buildable lots or not. The motion judge was nonetheless persuaded by the plaintiff's position.

We are unconvinced that this exception to the subdivision control law is applicable here, for two reasons. First, the 2021 plan was simply too unclear to permit the board to conclusively determine that it qualified for an ANR endorsement. While the words "not a buildable lot" appear on the 2021 plan, there is no indication as to which portions of the property that notation applied.[5] Furthermore, although the plaintiff suggested in email correspondence with the defendants that some portion of the property was unavailable for construction due to unbuildable

---

[5] We note that the three lots contained in the 2020 plan were clearly demarcated as such. Similar markings do not appear on the 2021 plan.

terrain, such terrain does not appear to be clearly identified on the plan itself.

Second, by including buildable lots on both sides of the proposed way in the 2020 plan, the plaintiff essentially asserted that at least some portion of the land on each side of the proposed way included buildable terrain.  That claim, however, was contradicted by the 2021 email's portrayal of the relevant terrain as unbuildable due to wetlands.  This contradiction, together with the 2021 plan's lack of clarity, was sufficient to support the board's refusal to provide the ANR endorsement on the grounds that the 2021 plan in fact did depict a subdivision on which land was "available for use[] as the site of one or more buildings," G. L. c. 41, § 81L.  Without more, we cannot say that the board erred in denying an ANR endorsement under G. L. c. 41, § 81P.  See also G. L. c. 41, § 81O.

The judgment is reversed and a new judgment shall enter affirming the decision of the board.

<u>So ordered</u>.

By the Court (Wolohojian,
 Desmond & Sacks, JJ.[6]),

Assistant Clerk

Entered:  March 29, 2024.

---

[6] The panelists are listed in order of seniority.