BOARD OF SELECTMEN OF PEMBROKE & another[1] *vs.*
R. & P. REALTY CORP.

Plymouth.      October 6, 1964. — November 24, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Subdivision Control. Zoning,* Material removal. *Bona Fide Purchaser.*

Under G. L. c. 41, § 81U, as amended through St. 1958, c. 377, § 1, there was not "final action regarding" a definitive subdivision plan within sixty days after its submission to a town's planning board where the board approved the plan subject to certain conditions within the sixty days but did not file a certificate of its action with the town clerk until after the expiration of the sixty days, and it must be deemed that the plan was approved without conditions upon the expiration thereof. [122, 127]

A certificate by a town clerk in 1958, reciting that a definitive subdivision plan was submitted to the planning board of the town on September 15, that "no notice of final action" by the planning board under G.L. c. 41, § 81U, was filed in the town clerk's office before November 18, that he "received no notice of appeal [under § 81BB] in connection therewith before" December 9, and that "the approval resulting from such failure has become final," was adequate to comply with § 81V. [123, 127]

Where a town's planning board approved with conditions a definitive subdivision plan within sixty days after its submission but did not file a certificate of the decision with the town clerk until after the expiration of the sixty days, and an appeal to the Superior Court in equity under

---

[1] The planning board became a party plaintiff by intervention when the amended bill and the defendant's answer were filed.

G. L. c. 41, § 81BB, was taken from the "recorded" decision within twenty days after the filing of the certificate but more than twenty days after the expiration of the sixty days, a decree purporting to annul the decision did not affect the constructive unconditional approval of the plan resulting under G. L. c. 41, § 81U, as amended through St. 1958, c. 377, § 1, from the planning board's failure "to take final action regarding" the plan within the sixty days. [127]

A definitive subdivision plan constructively approved by a town's planning board under G. L. c. 41, § 81U, as amended through St. 1958, c. 377, § 1, by the board's failure "to take final action regarding" the plan within sixty days after its submission was a plan "approved by" the planning board within a section of the town's zoning by-law dealing with material removal and providing that nothing in that section should prohibit removal of material "from any way designated on a plan . . . approved by" the board. [121–122, 128]

After a definitive subdivision plan had been constructively approved without conditions under G. L. c. 41, § 81U, as amended through St. 1958, c. 377, § 1, by reason of the planning board's failure to complete final action thereon seasonably, although the board intended and purported to approve the plan subject to certain conditions, one who bought the land in question with knowledge of the board's intent respecting conditions would not be entitled to the protection afforded to a bona fide purchaser by § 81W against subsequent action by the board under § 81W to "modify, amend or rescind" the constructive unconditional approval of the plan. [128–129]

BILL IN EQUITY filed in the Superior Court on June 28, 1962.

The suit was heard by *Dewing, J.*

The case was submitted on briefs.

*James A. Shannon & Eugene L. Tougas* for the defendant.

*Joseph F. McGaffigan,* Town Counsel, for the plaintiffs.

WHITTEMORE, J. The board of selectmen of Pembroke, having the power to enforce the zoning by-law of the town, sought in the Superior Court declaratory relief and an injunction to bar the removal of sand and gravel from land of R. & P. Realty Corp. The case was submitted on a statement of agreed facts. The final decree from which the defendant has appealed granted declaratory and injunctive relief in accordance with findings and rulings of the judge.

The zoning by-law in § 5A provides: "Sod, Sand, Gravel, Loam and Stone Removal shall be permitted in any area only after a permit has been granted by the Board of Select-

men . . . . Nothing herein shall be construed to prohibit the removal of . . . [such material] from any way designated on a plan which has been approved by the Planning Board . . . .''

The defendant was removing sand and gravel without a permit under the contention that it was operating under a definitive subdivision plan that was constructively approved when the board failed to take final action on the plan under G. L. c. 41, § 81U, as amended through St. 1958, c. 377, § 1, within sixty days after the submission of the plan to the planning board on September 15, 1958.

The planning board within sixty days of September 15, that is on November 8, 1958, acting in accordance with G. L. c. 41, § 81U, approved the plan subject to eight conditions. The board did not, however, send to the town clerk a certificate of its decision until November 20, 1958, sixty-six days after the submission of the plan, and the defendant contends that the omission to take this step within sixty days was failure ''to take final action regarding . . . [the] plan . . . within sixty days after . . . submission,'' which by the statute is to ''be deemed to be an approval,'' without any conditions, of the plan as it was submitted.

The statute, G. L. c. 41, § 81U, as in force on September 15, 1958 (see St. 1958, c. 377, § 1, effective ninety days after its approval, June 9, 1958), provided in part: ''After the hearing required by section eighty-one T . . . the planning board shall approve, or, if such plan does not comply with the subdivision control law or the rules and regulations of the planning board . . . shall modify and approve or shall disapprove such plan, shall file a certificate of its action with the city or town clerk, a copy of which shall be recorded by him in a book kept for the purpose, and shall send notice of its action by registered mail, postage prepaid, to the applicant at his address stated on the application. . . . Failure of the planning board to take final action regarding a plan . . . within sixty days after . . . submission . . . shall be deemed to be an approval thereof.''

On December 10, 1958, the attorney for James Rindone,

the then owner of the land, acting under G. L. c. 41, § 81V,[2] requested of the town clerk a certificate of the constructive approval of the plan as submitted on September 15, 1958. The town clerk on December 15, 1958, issued the following certificate: "I, William A. Key, do hereby certify that I am Clerk of the Town of Pembroke; That under the provisions of the Subdivision Control Law, there was submitted to the Planning Board of the Town of Pembroke on September 15, 1958, for approval by said Board, a definitive plan of a subdivision known as 'Creshore Acres' owned by James Rindone; That no notice of final action by the said Planning Board under the provisions of General Laws (Ter. Ed.) Chapter 41, Section 81-U was filed in my office before November 18, 1958; That I received no notice of appeal in connection therewith before the ninth day of December, 1958, in accordance with the provisions of Section 81-BB of said Chapter 41; That the approval resulting from such failure has become final."

The certificate was recorded in the registry of deeds on December 16, 1958, as was the definitive plan of the subdivision. Also, on December 16, 1958, James Rindone conveyed the parcel to the defendant, R. & P. Realty Corp., in which his son and son-in-law were officers, directors, and sole stockholders. James Rindone was at no time an officer, director or stockholder of the corporation.

The judge, rejecting the defendant's contention, ruled that the planning board's decision on November 8 was the "final action regarding a plan" required by the statute and that the board's failure to file a certificate of its action with

---

[2] General Laws c. 41, § 81V, as inserted by St. 1953, c. 674, § 7, provides in part: "In case of the approval of a plan by reason of the failure of the planning board to act within the time prescribed, the city or town clerk shall, after the expiration of twenty days without notice of appeal to the Superior Court, or, if appeal has been taken, after receipt of certified records of the superior court indicating that such approval has become final, issue a certificate stating the date of the submission of the plan for approval, the fact that the planning board failed to take final action and that the approval resulting from such failure has become final. The plan bearing such endorsement or the plan and such certificate, as the case may be, shall be delivered by the planning board, or, in the case of the certificate, by the city or town clerk, to the person who submitted such plan."

the town clerk within sixty days of September 15, 1958, was not constructive approval of the plan.

It is, of course, apparent that § 81U, as amended through St. 1958, c. 377, § 1, was ambiguous. Was the "*final* action *regarding* a plan" (emphasis supplied), which the board must take within sixty days if the plan was not to be deemed approved, the "action" of the board directly related to the plan in approving, or modifying and approving or disapproving the plan or was it the giving of notice to the applicant and the filing with the town clerk of the certificate of its decision in respect of its plan? In *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 161, the construction of § 81U in this aspect was adverted to but not decided. We there said: "If disapproval without a hearing, intended as final action, takes place within the forty-five day period [now sixty days], it is final board action, *at least if taken otherwise* in accordance with § 81U" (emphasis supplied). In the *Pieper* case the plaintiff contended that the notices under § 81U, given within the forty-five day period, were inadequate because the notice to him was not by registered mail and the notice to the clerk was not a formal certificate. We noted that Pieper had treated the board's action as final by a timely filing of his bill in equity and the giving of notice to the town clerk under § 81BB. We held that in these circumstances "where the informalities of the board's action affected only him," Pieper should not be heard to contend that the "administrative action" taken was not final board action.

The act of filing the certificate with the town clerk is an act that affects the rights of the owner, his grantees, and the public in respect of the plan. Such an act, within usual and well understood meanings of the words used, is action regarding the plan. That act, and the giving of notice to the applicant, are the final acts in any way related to the plan that the planning board must perform under § 81U.

Nevertheless, apart from the statutory context, discussed below, it could be said that the final act regarding the plan itself was the decision of the board about the plan whereas

the act of filing the certificate was an act regarding the certificate. This meaning of "[f]ailure . . . to take final action regarding a plan" is the meaning given these words in the amendment of 1960 (St. 1960, c. 266, § 2), which added a specific provision to the effect that failure to file the certificate within the sixty day period results in constructive approval. By that amendment § 81U now reads in part: "Failure of the planning board either to take final action or to file with the . . . town clerk a certificate of such action regarding a plan submitted by an applicant within sixty days after such submission . . . shall be deemed to be an approval thereof."

But this 1960 meaning of the words does not control the construction of the 1958 statute. The construction of § 81U, as amended through St. 1958, c. 377, § 1, must be made in its statutory context.

The intention of relevant sections of the Subdivision Control Law is to set up an orderly procedure for definitive action within stated times, and for notice of that action in offices of record within stated times, so that all concerned may rely upon recorded action or the absence thereof within such times. See G. L. c. 41, §§ 81V, 81W, 81X, 81BB, 81EE; Carey v. Planning Bd. of Revere, 335 Mass. 740, 745.

Section 81U must be construed with particular reference to §§ 81V (quoted in part in note 2), and 81BB. Section 81BB, as amended through St. 1957, c. 199, § 2, provides in part: "Any person . . . aggrieved by . . . any decision of a planning board concerning a plan of a subdivision, or by the failure of such a board to take final action concerning such a plan within the required time . . . may appeal to the superior court sitting in equity . . . provided, that such appeal is entered within twenty days after such decision has been recorded in the office of the . . . town clerk or within twenty days after the expiration of the required time as aforesaid, as the case may be, and notice of such appeal is given to such . . . town clerk so as to be received within such twenty days. . . . The court shall hear all pertinent evidence and determine the facts, and upon the facts so

determined, shall annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require.''

Sections 81U, as amended through St. 1958, c. 377, § 1, and 81BB, read together, showed the intention that inaction in respect of a plan within the sixty day period should result in constructive approval and that a person aggrieved by that result should have a right of appeal. Those sections also showed the intention that an interested party should be able to ascertain at the town clerk's office the action or inaction of the board that had been determinative of his rights. If the ''final action regarding a plan'' that must be taken within sixty days of submission included the filing of the certificate with the town clerk, the latter's records were complete and the rights of a person aggrieved were ascertainable at the clerk's office. On the other hand, if the ''final action'' that would bar the constructive approval of the plan was a decision of the board made within the sixty day period but not recorded, these different results followed: The town clerk's records would not show the facts determinative of the right to appeal. Inquiry would have to be made of the board for, if there had been no decision, the right of appeal would expire on the eightieth day after submission of the plan, whereas, if there had in fact been a decision, the time for appeal therefrom would depend upon when thereafter, within a period unlimited by the statute, the board did file the certificate of its decision. By § 81BB the only limitation is that the appeal be ''entered within twenty days after such decision has been recorded.'' Furthermore, by such a construction, the intention of § 81V that the state of the record at the town clerk's office determine the right to a certificate by the clerk for record at the registry of deeds would be thwarted. Notwithstanding the absence of a certificate from the board in his records, the clerk could give his certificate after eighty days from submission of the plan only if in fact the planning board had not made a decision about the plan within sixty days of its submission. The clerk, upon request for

a certificate, would be obliged to make inquiry of the planning board to determine the fact as to "final action."

We think it plain that the Legislature did not intend these gaps and uncertainties in the specification of a procedure designed to provide definitive rights to accrue upon final action or inaction within stated times and for record notice of such action or inaction. The language of § 81U, as amended through St. 1958, c. 377, § 1, as we have shown, does not require such a construction and we do not adopt it. We rule, therefore, that "final action regarding a plan . . . within sixty days" under § 81U as it stood prior to the 1960 amendment was inclusive of the filing of the certificate with the town clerk. The same considerations that made a clarification highly advisable and resulted in the 1960 amendment determine the construction of the prior § 81U in its context.

In view of the foregoing, we hold also, contrary to the ruling of the judge in the Superior Court, that the town clerk's certificate was adequate to comply with § 81V.

On December 9, 1958, aggrieved owners of nearby land appealed to the Superior Court in equity from the decision of the planning board "recorded with the Town Clerk on November 20, 1958." This appeal was taken nineteen days after the belated filing of the board's certificate with the town clerk and eighty-five days after the submission of the plan. What we have just held establishes that the time for appeal from approval of the plan was twenty days after the last day for the filing of the certificate of the board's action. The last day for such filing was November 14. The last day for appeal was therefore December 4. The final decree in that case, recorded with the registry of deeds, purported to "annul" the decision of the planning board approving the subdivision plan submitted September 15, 1958. We do not construe that suit as related to the constructive approval of the plan without conditions that resulted from the failure of the board to file a certificate with the town clerk within the statutory period. It is inconsequential to any issue here that there is a decree in another suit annulling

the decision of November 8, 1958, which on this record never became effective.

James Rindone knew that the planning board had approved the plan only on eight conditions. Rather than act to get the necessary certificate filed and to appeal, he appears to have relied on the construction of the statute that we have now made. The constructive approval of the plan, so long as it remained in effect (see below), gave him and his grantees, with or without knowledge of the board's ineffective decision, the right to deal with the plan as a constructively approved plan and to deal with the land accordingly. We rule that the plan is a "plan which has been approved by the Planning Board" under § 5A of the zoning by-law. Since the plan is effective for the construction of ways and the sale of lots it is necessarily effective for the exception in § 5A that is designed to permit the ways to be constructed.

It does not necessarily follow that the town and the planning board are without means of relief. General Laws c. 41, § 81W, provides in part: "A planning board, on its own motion or on the petition of any person interested, shall have power to modify, amend or rescind its approval of a plan of a subdivision, or to require a change in a plan as a condition of its retaining the status of an approved plan.[3] . . . No modification, amendment or rescission of the approval of a plan of a subdivision or change in such plan shall affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan, or any rights appurtenant thereto, without the consent of the owner of such lots, and of the holder of the mortgage or mortgages, if any, thereon."

The family relationship between James Rindone and the officers, directors, and stockholders of the defendant does not establish that the defendant did not buy in good faith

---

[3] Section 81DD provides that an owner may recover damages from the town "to the extent that he shall have changed his position or made expenditures in reliance upon such approval."

under § 81W.  But if, as may be, those acting for the defendant knew before title passed[4] that the planning board intended approval only on conditions, the defendant would not be entitled to the protection afforded bona fide purchasers by § 81W.

The final decree is reversed.  A final decree is to enter declaring that the plan as submitted on September 15, 1958, was constructivly approved because a certificate of the board's action was not filed with the town clerk within sixty days after the submission of the plan and that this is approval within the meaning of § 5A of the zoning by-law; provided, however, that the decree shall be without prejudice to an application to enjoin removal of sand and gravel from the defendant's land upon the initiation by the planning board under G. L. c. 41, § 81W, of action to modify, amend or rescind the constructive approval of the plan. The decree may provide for retention of jurisdiction in the Superior Court for the purposes of such an application.

*So ordered.*

---

[4] The record shows a suit in the Superior Court begun July 13, 1961, by R. & P. Realty Corp. against James Rindone (with no notice to the town) on the ground that the planning board had not approved the subject plan.  The final decree ruled that the recorded town clerk's certificate controlled the use of the land.  The present record does not show whether that suit to settle questions between the parties resulted from newly acquired knowledge of the corporation or from its concern over the developing controversies about action of which it was informed before it took title.